## Case No. 15,678.
### UNITED STATES v. McGINNIS et al.
[1 Abb. U. S. 120; [2] 3 Int. Rev. Rec. 83, 159.]
District Court, D. New Jersey. March Term, 1866.

#### CRIMINAL LAW—JOINDER IN INDICTMENT—VIOLATION OF REVENUE LAW.

1. Where two persons composing a partnership make and sign, in their partnership name,

[1] [Reported by John A. Hayward. Esq., and Geo. C. Hazleton. Esq.]

[2] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

a false return to the assessor of internal revenue, they may be jointly indicted therefor.

2. Manufacturers of tobacco are not exempt from indictment for violation of the internal revenue laws. The government is not confined to proceedings in rem, but may prosecute the individuals concerned, personally.

Motion to quash an indictment.

William Reed, Charles J. Bonsell, and D. W. Sellers, for the motion.

A. Q. Keasbey, U. S. Dist. Atty.

FIELD, District Judge. This is an indictment against Silas J. McGinnis and George Mountjoy, manufacturers of tobacco, for making a false and fraudulent .return under the internal revenue act. The motion is to quash the indictment. There are two classes of objections taken. The former apply only to the first count; the latter go to the whole indictment. I will consider the latter first; for if these are sufficient, the motion must be overruled, although the first count may be defective.

It is objected, in the first place, that the defendants are improperly joined in the same indictment. The general rule is that where two or more join in the commission of an offense, they may be indicted either jointly or separately. The rule is admitted. But it is said, there is an exception to it in the case of perjury, and that this, although not a case of perjury, is yet analogous to it; or, to use the language of counsel, it is "next of kin." But perjury is no exception to the rule. It is rather an illustration of it. The rule is, when the offense is joint there may be a joint indictment. But in perjury, from the very nature of the case, the offense cannot be a joint one. Nor is this peculiar to perjury. It applies as well to other offenses; such as the speaking of seditious and blasphemous words, or the publication by two booksellers of the same libel. In all these cases the offense is, from its very nature, several and not joint. But when two joined in singing a libelous song, it was held by Lord Mansfield, that they might be jointly indicted. Rex v. Benfield, 2 Burrows, 983. So if two booksellers, who are partners, publish a libel, they may be joined in the same indictment. Archb. Cr. Pl. 59.

Here the defendants are partners in the business of manufacturing tobacco, and they are indicted for making a false return to the assessor. The return is made and signed by them in their partnership name. It is their joint act; and if the return is false they have committed a joint offense, and may, therefore, be jointly indicted. I do not see how they could be indicted in any other way. It could hardly be said that the false return was the act of McGinnis alone, or the act of Mountjoy alone. It was the joint act of the firm of McGinnis & Mountjoy. There is nothing, I think, in this objection.

The other objection goes, not only to the substance of the indictment, but it strikes at the foundation of the whole prosecution. The criminal provisions of the internal revenue act, it is said, do not apply to the manufacturers of tobacco. They may be proceeded against in rem, but not by way of indictment.

I confess I was somewhat startled by this proposition. It was an entirely new idea. And I said to myself, while counsel was urging it so earnestly, can this be so?' Is it possible that congress, after all the pains they have bestowed upon this act, and the repeated revisions to which they have subjected it, should have made this serious omission? If the business had been one from which little or no revenue was expected, we could better understand how congress might have overlooked it. But it is a business from which a larger amount of revenue is derived than from almost any other single source. It is a business, too, in which the temptations to fraud, and the facilities for committing it, are greater, perhaps, than in any other, owing to the fact that the duties are so high, and the articles so easily concealed. It might have been supposed, therefore, that when the criminal provisions of the act were framed, congress would have had in view, in an especial manner, the manufacturers of tobacco. And yet, we are told, they are the very manufacturers to whom these criminal provisions do not apply. You may seize their tobacco, if they happen to have any on hand, when their frauds are discovered, but they are not liable to indictment.

Let us see if this be so. Section 15 of the internal revenue act (13 Stat. 227) provides "that if any person shall deliver or disclose to any assessor or assistant assessor appointed in pursuance of law, any false or fraudulent list return, account, or statement, with intent to defeat or evade the valuation, enumeration, or assessment intended to be made," he shall, on conviction, be fined in any sum not exceeding one thousand dollars, or be imprisoned for not exceeding one year, or both, at the discretion of the court. And by section 82, the word "person" is made to include "partnerships, firms, associations, and corporations." Id. 258.

Section 15 would seem to be as comprehensive as language could make it, and to embrace within its scope every possible case of a false or fraudulent return. But still, it is said, it does not apply to the manufacturers of tobacco. Why? The argument, if I understand it, rests entirely upon an expression which occurs in section 11. By that section it is provided, "that it shall be the duty of any person, partnership, firm, association, or corporation made liable to any duty, license, stamp, or tax imposed by law, when not otherwise provided for, on or before the first Monday of May in each year, and in other cases before the day of levy, to make a list or re-

turn, verified by oath or affirmation, to the assistant assessor of the district where located, of the amount of annual income, the articles or objects charged with a special duty or tax, the quantity of goods, wares, and merchandise made or sold, and charged with a specific or ad valorem duty or tax," &c. 13 Stat. 225. This section simply requires yearly returns of incomes and articles subject to taxation. Yearly returns were thought to be sufficient in ordinary cases. But there were associations, and there were manufacturers, from which, it was believed, more frequent returns ought to be required, and these were to be provided for in subsequent sections. Among these were the manufacturers of tobacco. Hence the introduction of the words "when not otherwise provided for." These words do show that section 11 was not intended to apply to the manufacturers of tobacco. But how do they show that the provisions of section 15 are not applicable to them? What possible bearing or effect can they have upon the latter section? The case, then, stands thus: By section 11, yearly returns are required, unless in cases otherwise provided for. The case of manufacturers of tobacco is otherwise provided for in section 90. Monthly returns are there required of them. But by section 15, "any false or fraudulent return" is an offense, to be punished by indictment. Why does not this apply equally to the yearly returns required by section 11, and the monthly returns required by section 90, from the manufacturers of tobacco? Can any possible reason be assigned why yearly returns, if false, should be the subject of an indictment, and not monthly returns?

Such would be a fair, and, I think, a necessary construction of the act, even if section 90 did no more than provide for monthly returns by the manufacturers of tobacco. But as if to remove all doubt upon this subject, and make assurance doubly sure, there is a clause inserted in section 90, which seems to render all further reasoning unnecessary. After providing that manufacturers of tobacco shall make returns or statements to the assessor on or before the tenth day of each month, and that in case the duties are not paid within five days after demand thereof, distraint may be made for the amount thereof, with ten per cent. additional, we find these significant words: "Subject to all the provisions of law relating to licenses, returns, assessments, payment of taxes, liens, fines, penalties, and forfeitures, not inconsistent herewith, in the case of other manufacturers." [2] 13 Stat. 474.

The clause was not, perhaps, necessary, and might be deemed superfluous. And yet, it seems to have been inserted out of abundant caution, and as if to guard against just such an objection as that which has been taken. It is in effect saying, that although monthly returns, and returns of a peculiar nature, are required of the manufacturers of tobacco, they shall, nevertheless, be subject to all the provisions of the act relative to false returns, and the penalties consequent thereon, as in the case of other manufacturers.

It was intimated that by the word "penalties" in this clause, was meant pecuniary penalties, and not liability to indictment. But there are no pecuniary penalties provided for the making of false returns, otherwise than by indictment. Unless, then, manufacturers of tobacco can be proceeded against by way of indictment for making false and fraudulent returns, they are liable to no penalty whatever. Such, certainly, could not have been the intention of the act.

I am of the opinion, therefore, that the criminal provisions of the internal revenue act do apply to the manufacturers of tobacco. If I am right in this conclusion, the motion to quash must be denied, without considering the objections which have been taken to the first count of the indictment.

It was stated by the learned counsel who argued this case upon the part of the defendants, that in the state of Pennsylvania there had been no criminal prosecutions under the internal revenue act. They had been satisfied there with proceedings in rem. But in this state, such proceedings have been found in many cases to furnish a very inadequate remedy. There have been, therefore, a number of criminal prosecutions in this court. And there have been convictions, too. And it is come to be generally understood, that where individuals or associations are guilty of making false and fraudulent returns, they expose themselves, not only to seizure and forfeiture of their property, but to fine and imprisonment. To this may be owing, in part, the remarkable fact, that while New Jersey is but the sixteenth state in the Union, in point of population, there are but five that contribute so large an amount as she does to the internal revenue of the government. It is to the vigilance and fidelity of our revenue officers, and the effective manner in which the provisions of the act are carried out, that I believe this result is in some measure to be ascribed.

The motion to quash is denied.

[See Case No. 15,829.]

UNITED STATES (McGLINCHY v.). See Case No. 8,803.

---

[2] In the amendment of section 90, by the act of July 13, 1866 (14 Stat. 124, 125), the words quoted in the opinion above are omitted, and the following clause inserted: "And all the provisions of law relating to manufacturers generally, so far as applicable and not inconsistent herewith, shall be held to apply to the manufacture of tobacco, snuff, and cigars."